[Crim. No. 9777. Fourth Dist., Div. Two. Nov. 20, 1978.]

THE PEOPLE, Plaintiff and Appellant, v.
JOSEPHINE FRANCES JORDAN, Defendant and Appellant.

## COUNSEL

Cecil Hicks, District Attorney, Michael R. Capizzi, Assistant District Attorney, Bruce M. Patterson and Thomas K. Buck, Deputy District Attorneys, for Plaintiff and Appellant.

F. Gordon Chytraus and Jeffrey W. Doeringer for Defendant and Appellant.

## OPINION

MORRIS, J.—This is an appeal by the People of the State of California from a dismissal pursuant to Penal Code section 1385 of an information charging the defendant Josephine Jordan with welfare fraud (Welf. & Inst. Code, § 11483).

Following her arraignment in superior court, defendant made a motion to dismiss the information on the ground that the state had failed to seek restitution from the defendant prior to the bringing of the criminal action as required by Welfare and Institutions Code section 11483.[1]

Treating the defendant's motion as a demurrer, the court sustained the demurrer, permitted defendant to withdraw her plea, and continued the

[1]Section 11483 provides that "All actions necessary to secure restitution shall be brought against persons in violation of this section as provided in sections 12250 and 12850." Section 11483 incorporated by reference the language of those sections, which provided that "It is the intent of the Legislature that restitution shall be sought by request, civil action, or other suitable measures prior to the bringing of a criminal action." The specific incorporation of this language is not affected by the fact that section 12250 was repealed by Statutes 1973, chapter 1216, section 36, page 2903, and that section 12850 was repealed by Statutes 1973, chapter 1216, section 37, pages 2903-2918 (see also the title of ch. 1216, p. 2895), and Statutes 1974, chapter 75, section 12, page 170. (See *People v. McGee* (1977) 19 Cal.3d 948, 958, fn. 3 [140 Cal.Rptr. 657, 568 P.2d 382].)

matter to permit the filing of a new information. Prior to the date set for filing the new information, the People made a motion to reconsider the previous ruling. The People's motion was granted. The previous orders were vacated, defendant's plea reinstated, and the matter set for an evidentiary hearing on defendant's motion to dismiss.

Evidence produced at the evidentiary hearing revealed that at the time of the initial welfare department investigation of the alleged welfare fraud the defendant had fled the state, and that she later returned using a different name and social security number. Thereafter an investigator from the district attorney's office contacted her, handed her a copy of a demand letter, orally advised her of the dollar amount of restitution owing, and immediately placed her under arrest.

Following the evidentiary hearing, the court took the matter under submission, ordering the parties to return on December 6, 1977.

On December 6, 1977, in open court, the defendant's attorney advised the court that defendant was prepared to pay the full amount of $5,388.50 alleged to have been obtained by fraud. After some discussion on how the amount was to be paid, defendant's mother stated that she would write a personal check for the full amount. Although the district attorney advised the court that it was against the policy of his office and the welfare department to accept personal checks, the court authorized the use of the check for restitution, advising the defendant as follows: "[M]y inclination would be to dismiss the case under [Penal Code] Section 1385 upon clearance of that check. That would not prevent the District Attorney's office from refiling the case against you. [¶] You understand that?" to which defendant nodded agreement, and responded "yes" to an inquiry by the court as to whether she had "talked to her attorney about that."

Having satisfied himself that defendant understood that the dismissal would not prevent the refiling of the charge, the court made the following statement and ruling:

"Based on the McGee case . . . I think that since they are trying to make a collection agency out of the District Attorney's office, until that gets changed by legislation, I think that under 1385 of the Penal Code, some consideration should be given.

"Therefore, I'm making a ruling that this case shall be dismissed under Section 1385 of the Penal Code in the furtherance of justice, and the

minutes should reflect that it is in light of the fact that a check in the amount of $5,388.50 has been tendered to the District Attorney's office as full restitution as required by the McGee case.

"Furthermore, this order to dismiss is taken under submission for a period of two weeks . . . to the 20th of December, at which time the dismissal is automatic in the event the check has cleared."[2]

The check cleared, and on December 22, 1977, order of dismissal was entered. It is from that order that the state has appealed.[3]

## I

■ The order is appealable. Penal Code section 1238, subdivision (a)(8) now provides that an appeal may be taken by the People from "An order or judgment dismissing or otherwise terminating the action before the defendant has been placed in jeopardy or where the defendant has waived jeopardy." (See also *People* v. *Curtiss* (1970) 4 Cal.App.3d 123, 126 [84 Cal.Rptr. 106].) Contrary to respondent's contention, jeopardy had not attached in the instant matter. Defendant had simply been arraigned and made a pretrial motion to dismiss. The authorities cited by respondent are not in point.

## II

■ Appellant contends that the effect of the court's dismissal of the felony charge upon payment of restitution constitutes a civil compromise prohibited by Penal Code section 1379.[4] It did not. As demonstrated in the statements made by the court at the time restitution was accepted and

[2]Although not reflected in the minutes, the court made an oral finding that, "Under these circumstances with aliases by the defendant and with her history of leaving the State of California, I felt that that [presumably the demand for restitution made at the time defendant was arrested] was sufficient notice."

[3]The defendant filed a cross-appeal from "that portion of the order of the above-entitled Court finding that cause existed for defendant's arrest . . . ." There was no such order. Moreover, even if the court had denied defendant's motion to dismiss, the order would not have been appealable. (See *People* v. *Phipps* (1961) 191 Cal.App.2d 448, 454 [12 Cal.Rptr. 681].)

[4]Penal Code section 1379 provides, "No public offense can be compromised, nor can any proceeding or prosecution for the punishment thereof upon a compromise be stayed, except as provided in this Chapter." The relevant sections in that chapter are sections 1377 and 1378. Section 1377 authorizes the compromise of certain offenses when the person injured by an act constituting a *misdemeanor* has a remedy by a civil action, the compromise to be effected as provided in section 1378.

the conditional dismissal entered, the court did not intend to prevent further prosecution of the respondent and did not, in its order, foreclose that possibility. Moreover, it did not stay further proceedings by way of refiling. This was made quite clear in the questions directed at respondent to be sure she understood that the restitution payment did not prevent the district attorney from refiling. Moreover, it was the subject of some discussion between court and counsel.

What the court did intend was to compel the People to comply with the procedure required by the Supreme Court in *People* v. *McGee, supra,* 19 Cal.3d 948. Whether the court's order was in fact consistent with the mandate of *McGee* and thus in furtherance of justice, we consider in connection with appellant's remaining contentions.

### III

Appellant contends that the dismissal upon payment of restitution was improper under Penal Code section 1385 on the grounds that the dismissal was not "in furtherance of justice" and the reasons as set forth in the minutes are improper and insufficient.

We have concluded that the resolution of these contentions is to be found in the proper understanding of the *McGee* decision.

In *People* v. *McGee, supra,* 19 Cal.3d 948, Evelyn and Earnest McGee were charged with welfare fraud (Welf. & Inst. Code, § 11483) and conspiracy to commit fraud. The information did not allege that the welfare department or the district attorney had in any way attempted to seek restitution prior to the filing of the criminal charge. The defendants demurred to the information, contending that such allegation was required. The demurrer was overruled and the defendants were tried and convicted. The California Supreme Court held that, although compliance with the statutory requirement that restitution be sought prior to bringing a criminal action need not be alleged in the information (confirming its prior holding in *In re Sands* (1977) 18 Cal.3d 851 [135 Cal.Rptr. 777, 558 P.2d 863]), Welfare and Institutions Code section 11483 does create a procedural defense which may properly be raised and resolved by a pretrial motion to set aside the information. (*People* v. *McGee, supra,* 19 Cal.3d 948 at p. 967.) The court reversed the convictions under Welfare and Institutions Code section 11483 as to those counts as to which the prosecution failed to show that restitution had been sought from the defendants prior to institution of criminal proceedings.

Appellant argues that *McGee* could be a basis for dismissal only if the state unreasonably failed to seek restitution prior to bringing a criminal action. Therefore, since the trial court found that the procedure followed at the time of defendant's arrest provided "sufficient notice," *McGee* does not support the dismissal. Moreover, appellant argues, *McGee* authorizes dismissal in appropriate cases on a ground wholly independent of section 1385; it does not support a dismissal on such ground under section 1385 "in furtherance of justice."

We agree that *McGee* makes it clear that the failure to seek restitution prior to bringing of a criminal action as required by Welfare and Institutions Code section 11483, constitutes an independent basis for dismissal. Therefore, it is unnecessary for the court to make additional findings to support the dismissal. However, it does not necessarily follow that the failure to afford a defendant the opportunity to make restitution prior to trial does not in an appropriate case justify dismissal in furtherance of justice under section 1385.

Although not a part of the minute order, the court did state the finding that under the circumstances, i.e., defendant's flight from the state and return under an alias, the notice was sufficient and the arrest at the time of the demand for restitution was not unreasonable. Based upon this view of the case, the court denied the motion to dismiss outright as authorized by the *McGee* decision. Nevertheless, the trial court was obviously of the opinion that *McGee* contemplates something more than mechanical compliance with the statutory mandate to request restitution: namely, that the person accused of fraud should be given an opportunity to make restitution, and if restitution is made, then the prosecutor should be required to reconsider the case in light of the fact that restitution has been made to determine whether prosecution is in fact warranted.

We agree. After discussing the legislative history of the pertinent statutory language, the *McGee* court concluded as follows: "Although the Legislature subsequently deleted that portion of the bill that prohibited prosecution whenever an accused made restitution, the Legislature enacted, in essentially the same language as the original draft, the portion that compelled the state *to attempt* to obtain restitution prior to any criminal prosecution. This requirement assured those accused of welfare fraud that they would at least have an early *opportunity to make restitution* and, thereby, possibly obtain favorable consideration by the prosecuting authorities." (*People v. McGee, supra,* 19 Cal.3d 948, 964, second italics added.)

The court, further emphasizing the policy behind the legislation, continued as follows:

"We do not mean to suggest, of course, that the Legislature viewed welfare fraud as a nonserious crime or that the Legislature intended in any manner to condone the conduct of those who obtain excessive welfare benefits through intentional misstatements. . . .

"By enacting the more modest protections of the final version of the 1957 legislation, however, the Legislature did express its view that in light of the unique circumstances of those receiving welfare benefits, the state ought at least to seek restitution before instituting criminal proceedings. The Legislature was, of course, well aware that welfare benefits to the needy aged, the needy blind and needy dependent children provide such recipients with only the most minimum standard of living, and that, under such circumstances, fraud is often committed simply to obtain foodstuffs and common household items which are viewed as necessities by most members of our society. [Citation.] While such circumstances would, of course, in no sense legally excuse fraudulent conduct, the Legislature apparently concluded that with respect to these categories of offenses, *it is important to insure that enforcement officials make a case-by-case determination of whether the state's interest is adequately served simply by obtaining restitution, or whether criminal prosecution is in fact warranted.*" (*People* v. *McGee, supra,* 19 Cal.3d 948, 965, italics added.)

Two significant purposes of the statutory procedure are thus elucidated: namely, (1) the defendant is to be given an opportunity to make restitution, and (2) the enforcement authority is to evaluate each case on the circumstances of that case, including the circumstance of restitution.

A decision to arrest and prosecute made prior to the making of the demand for restitution does not comport with the legislative intent as expounded by the Supreme Court in *McGee.* Applying the above principles to the facts of this case, we conclude that the trial court could properly find that, even though the immediate arrest was proper to prevent further flight by the defendant, the procedure adopted failed to comply with the two-pronged mandate of *McGee,* i.e., (1) give the defendant an opportunity to comply with the demand for restitution, and (2) give the prosecution an opportunity to evaluate the case in the light of repayment.

The procedure followed by the trial court, although it may not have been the only procedure available, did accomplish the legislative purpose. By permitting the defendant to make restitution in court, after having advised her that it would not prevent refiling of the charges, the court extended to defendant the opportunity to make restitution. By dismissing the information, the court intended to induce the prosecutor to make the "case-by-case" evaluation of the state's interest, mandated by *McGee* and, thereby, "possibly obtain [for defendant] favorable consideration by the prosecuting authorities." (See *People* v. *McGee, supra,* 19 Cal.3d 948, 964.)

In our opinion, the dismissal for the purpose of effectuating the legislative design may properly be designated in "furtherance of justice."

Appellant contends that the dismissal fails to meet the test stated in *People* v. *Orin* (1975) 13 Cal.3d 937, 945 [120 Cal.Rptr. 65, 533 P.2d 193], that the language "furtherance of justice," as used in section 1385, requires consideration both of the rights of the defendant and *"the interests of society represented by the People."* Again, *People* v. *McGee* suggests the answer. In *McGee* the People had argued that the statutory provision (Welf. & Inst. Code, § 11483) was not enacted for the benefit of those accused of welfare fraud, "but rather to advance the financial interests of the state" by seeking to have the state pursue the less costly efforts for civil restitution before incurring the greater expense of criminal prosecution. ■ Although rejecting the People's argument that the state's financial interest was the sole consideration, the court stated, "Although the fiscal considerations suggested by the People may well have played some role in the enactment of the statutory provisions at issue, we believe that the legislation was also designed to provide at least some modicum of protection to individuals accused of welfare fraud." (*People* v. *McGee, supra,* 19 Cal.3d 948, 963.)

Thus, we find in this statement both of the considerations required by the rule elaborated in *People* v. *Orin.*

■ We conclude that the trial court did not abuse the discretion vested in it under Penal Code section 1385. If the ultimate effect of this case is to bar a prosecution of defendant that should have been pursued, the fault lies, not with the trial court, but rather with the prosecutor, who rather than follow the admonition of the trial court to evaluate the case after restitution was made, in conformance with *McGee,* elected to resist

the statutory mandate and prosecute this appeal. (See Pen. Code, § 1238, subds. (a)(8), (b).)

The judgment is affirmed.

The purported appeal from the alleged order finding that cause existed for defendant's arrest is dismissed.

Gardner, P. J., and Tamura, J., concurred.